BAILEY BROWN, Senior Circuit Judge.
 

 This appeal arises out óf the involuntary liquidation of Caro Products, Inc. under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101-151326, which was enacted by the Bankruptcy Reform Act of 1978 (92 Stat. 2549). We are presented with the single issue of whether a trustee may invoke the new powers granted by the Act to avoid a transfer that occurred after the Act was passed but before the Act’s effective date. The transferee, H. Hirschfield and Sons, Inc., maintains that the 1978 Reform Act does not apply and that, in any event, avoidance of the transfer would constitute a violation of the Fifth Amendment. The district court held that Congress intended the Act to apply to such transfers and that the avoidance was constitutional. We affirm.
 

 I.
 

 The parties have stipulated the following facts. On August 15, 1979, Caro Products paid Hirschfield $17,733.91 for material that Hirschfield had delivered to Caro Products between April 27, 1979 and July 31, 1979. Caro was insolvent on the day of the payment, but Hirschfield neither knew nor had reason to know that Caro was insolvent. An involuntary petition was filed against Caro on October 17, 1979, within 90 days of the transfer to Hirsch-field. The payment occurred after the enactment date (November 6, 1978) but before the effective date (October 1, 1979) of the Bankruptcy Reform Act of 1978.
 

 The bankruptcy trustee brought an action under the voidable preference provision of the new Bankruptcy Code, 11 U.S.C. § 547(b), to set aside the transfer to Hirschfield.
 
 [1]
 
 This provision permits the trustee to avoid a transfer made within 90 days of the filing of a petition if the transfer was made while the debtor was insolvent, for the benefit of a creditor, on account of an antecedent debt and which enables the creditor to receive more than the creditor would receive under Chapter 7 of the Code. This provision marked an important departure from the prior bankruptcy law. Under the old law, the trustee could have avoided this transfer as a preference only if Hirschfield had known or had had reason to know that Caro Products was insolvent at the time of the transfer.
 
 [2]
 

 
 *351
 
 The parties agree that if the 1978 Reform Act controls transfers that occurred during the “gap period” between the date of enactment and the effective date, this transfer may be avoided. Hirschfield maintains, as stated, that the 1978 Reform Act was not intended to apply to transfers that were made during the gap period and, further, that such application to transfers made during that period would violate the Fifth Amendment.
 

 The bankruptcy court held that Congress intended § 547(b) to apply to the transfers at issue and that such an application did not violate the due process clause of the Fifth Amendment.
 
 In re Caro Products, Inc.,
 
 28 B.R. 245 (Bankr.E.D.Mich.1982). The district court affirmed. The district court pointed out that Congress expressly directed that the Reform Act apply to all cases begun on or after October 1, 1979. This expression, the court found, implied that Congress also intended the new Act to govern transactions completed before the effective date. The retrospective application of § 547(b) to the transfer now at issue, the court held, did not violate the due process or the taking clauses of the Fifth Amendment. The court noted that Hirsch-field’s interests were not completely destroyed because it joined the ranks of other creditors to whom the debtor’s assets would be distributed. Hirschfield, moreover, had notice of the possibility of future avoidance because the transfer took place after the enactment date. As the district court stated, “[b]y virtue of the gap period, [Hirschfield] had the same notice of such possibility as a creditor who received such a transfer after the effective date of the Reform Act.”
 

 II.
 

 It appears to us that we should proceed, as did the Supreme Court in a case presenting an analogous problem (see
 
 post,
 
 III), by first determining whether application of the 1978 Reform Act to this transfer presents a substantial constitutional question. If we determine that it does, we would then determine whether it is fairly possible to construe the 1978 Reform Act to avoid this constitutional question.
 

 We conclude that application of the 1978 Reform Act to this transfer during the gap period does not pose a substantial constitutional question and, further, that the Act was intended to apply to this transfer.
 

 III.
 

 In
 
 United States v. Security Industrial Bank,
 
 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Court considered the retrospective application of 11 U.S.C. § 522(f)(2), enacted by the 1978 Reform Act, which permits an individual debtor to avoid nonpossessory, nonpurchase-money liens on household furnishings. The liens in question, valid under state law, were created prior to the enactment of the 1978 Reform Act. The Court of Appeals had held that the 1978 Act was intended to apply retrospectively to liens created before enactment but held that such retrospective application violated the takings clause of the Fifth Amendment. The Supreme Court did not decide the constitutional question. It addressed this question solely to determine whether such retrospective application of the statute would raise a substantial constitutional question and thus bring into play the canon of construction that the constitutional question should be avoided if it is reasonably possible so to construe the statute. 459 U.S. at 78, 103 S.Ct. at 412.
 

 In considering the constitutional question, the Court conceded that § 522(f)(2) is a “rational exercise” of the authority of Congress with respect to bankruptcy and that, pursuant to this authority, Congress may retrospectively “impair contractual obligations.”
 
 Id.
 
 at 74, 103 S.Ct. at 410. But the Court said, if this power is invoked “to defeat traditional property interests ... [t]he bankruptcy power is subject to the Fifth Amendment’s prohibition against taking private property without compensation.
 
 Louisville Joint Stock Land Bank v. Radford,
 
 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).” 459 U.S. at 75, 103 S.Ct. at 410. In response to the contention that a
 
 *352
 
 taking analysis under the Fifth Amendment is inapposite since the government was not taking in the classical sense, the Court responded that such analysis “is not necessarily limited to outright acquisitions by the government for itself.”
 
 Id.
 
 at 78, 103 S.Ct. at 412. The Court went on to hold that, in the light of these considerations, retrospective application of § 522(f)(2) to defeat a vested property interest created before the provision was enacted would indeed raise a substantial constitutional question under the Fifth Amendment. The Court then, invoking the principle of construction that would, if fairly possible, avoid the constitutional question, determined that Congress did not intend that § 522(f)(2) apply to liens created prior to its enactment.
 

 IV.
 

 Although to allow the trustee in the instant case to avoid the transfer to Hirsch-field would “defeat a traditional property interest,” we do not believe that the reasoning of
 
 Security Industrial Bank
 
 applies to the constitutional question presented.
 

 Preliminarily, it should be noted that the Court there specifically stated that its holding does not apply to post-enactment but pre-effective date transfers. For the Court said in footnote 11:
 

 Because all of the liens at issue in this case were established before the enactment date we have no occasion to consider whether § 522(f)(2) should be applied to liens established after Congress passed the Act, but before it became effective.
 

 459 U.S. at 82, 103 S.Ct. at 414.
 

 There is no question but that Congress could have, consistent with the requirements of the Fifth Amendment, expressly made § 547(b) of the 1978 Reform Act effective as of the date of enactment. Instead, Congress expressly provided that the Act would apply to cases commenced on or after the effective date, October 1, 1979, and that § 547(b) would apply to transfers which occurred within 90 days of the filing of the petition. Congress therefore provided, expressly or at least by implication, that § 547(b) would apply to this transfer, even though it was made prior to the effective date, since it was made within 90 days of the filing of the petition. Certainly, Congress can constitutionally do by implication that which it could have done by express provision. Moreover, as pointed out by Judge Schroeder, concurring in
 
 In re Webber,
 
 674 F.2d 796, 804 (9th Cir.1982), which involved application of § 522(f)(2) to liens created during the gap period, Congress “gave some lead time for the public to gain familiarity with the new Act and to adjust debtor/creditor practice accordingly. The creditor can hardly claim to have been prejudiced by Congressional leniency in deferring the effective date.” Accordingly, we conclude that application of § 547(b) to the transfer involved here does not raise a substantial constitutional question, and therefore we need not apply the canon of construction that would have us seek to avoid application of § 547(b) to this transfer.
 

 y.
 

 As before indicated, the 1978 Reform Act expressly applies to bankruptcy matters begun on or after the effective date, October 1, 1979, and § 547(b) expressly provides that it applies to transfers made within 90 days of the filing of the petition. In the instant case, the petition was filed on October 17, 1979, and the transfer was made on August 15, 1979, well within the 90 day period. Congress must have contemplated that, as occurred here, transfers would be made before October 1, 1979, but within 90 days of petitions filed on or after that date and thus § 547(b) by its terms would be applicable to the transfers.
 

 In
 
 Security Industrial Bank,
 
 the Court recognized that the lien avoidance provision involved there, § 522(f)(2), might well be applicable to liens created during this gap period. In construing that provision to avoid the constitutional question raised by its application to pre-enactment liens, the Court said:
 

 
 *353
 
 Although the 1978 Act, in general, is effective for all cases commenced after its effective date, Congress might have intended that provisions that destroy previously vested property rights apply only to interests that came into effect after the enactment date. If § 522(f)(2) is such a provision, the remainder of the 1978 Act would not affect the enforceability of these liens, but would still apply to these liens and these cases.
 

 459 U.S. at 79, 103 S.Ct. at 413.
 

 We therefore conclude that § 547(b) means what it says or at least clearly implies, which is that, in this context, since this bankruptcy case was begun after the effective date by filing of the petition on October 17, 1979, this transfer may be avoided under § 547(b) because it was made within 90 days of the filing of the petition.
 

 The judgment of the district court is therefore Affirmed.
 

 [1]
 

 . 11 U.S.C. § 547(b) provides:
 

 Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made—
 

 (A) on or within 90 days before the date of the filing of the petition; or
 

 (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
 

 (i) was an insider; and
 

 (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
 

 (5) that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 

 [2]
 

 . The former section governing voidable preferences, 11 U.S.C. § 96 (Repealed), provided:
 

 (a)(1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
 

 (b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent.