REINHARDT, Circuit Judge:
I. BACKGROUND
A. Facts and Proceedings Below
On December 17,1979, Washburn & Roberts, Inc., a Washington corporation, filed a bankruptcy petition under the Bankruptcy Code of 1978, 11 U.S.C. § 101 et seq.[1] On February 11, 1981, the debtor filed this action seeking to avoid, under section 544(a)(3) of the Code, the transfer of a certain parcel of property from itself to Park East, a Washington partnership composed of itself and the individual defendants in this case. On August 31, 1982, a trustee in bankruptcy was appointed. On July 23, 1984, the bankruptcy court granted the defendants’ motion for summary judgment and quieted title to the property in Park East. On July 12,1985, the district court affirmed the bankruptcy court. The debtor’s trustee timely appealed.
*872 The property in. dispute, located near Yakima, Washington, is known as the Terrace Heights property. On April 30, 1979, Washburn & Roberts acquired title to the property. On May 24, 1979, the Park East partnership was formed to develop the property. On the same date, Washburn & Roberts transferred the Terrace Heights property to Park East as its contribution to the partnership’s capital, and received $45,-000 in cash in return. The deed was executed and delivered to Park East on the same .day, but for reasons best known to itself, the partnership decided not to record the deed. The deed was still unrecorded when Washburn & Roberts filed for bankruptcy on December 17, 1979. On January 16, 1980, Park East recorded its deed.
There are no disputed questions of fact, and we review de novo the conclusions of law of the bankruptcy and district courts, In re Global Western Development Corp., 759 F.2d 724, 726 (9th Cir.1985), including their conclusions concerning state law, In re McLinn, 739 F.2d 1395 (9th Cir.1984) (en banc).
B. Issues on Appeal
Section 544(a)(3) provided, at the time this case was commenced,[2] that the trustee has
the rights and powers of, or may avoid any transfer of property of- the debtor ... that is voidable by ... a bona fide purchaser of real property from the debt- or, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.
To determine what rights a bona fide purchaser would have, we look to state law. In re Gurs, 27 B.R. 163, 165 (Bankr.9th Cir.1983). Under Washington law, a bona fide purchaser prevails over a prior transferee who failed to record. Washington Revised Code § 65.08.070; Paganelli v. Swendsen, 50 Wash.2d 304, 311 P.2d 676 (1957). Accordingly, under section 544(a)(3), a trustee can generally avoid any unrecorded transfer of land in Washington.
The defendants (hereafter collectively referred to as Park East) make two contentions, however, as to why the general rule does not apply and the trustee cannot avoid the transfer of the Terrace Heights property. Their first contention, which was accepted by both courts below, is that a resulting trust was created in favor of the partnership and that section 544(a)(3) does not authorize the trustee in bankruptcy to avoid the transfer of property that is subject to such a trust. Their second contention is that even if section 544(a)(3) is otherwise applicable, it cannot be applied in this case because the transfer occurred prior to the effective date of the Bankruptcy Code of 1978. We turn now to Park East’s first contention.
II. RESULTING TRUSTS
A resulting trust arises “where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein.” Restatement (Second) of Trusts § 404 (1959). The trust exists because “the person who holds the property is not entitled to the beneficial interest.” Restatement (Second) of Trusts introductory note to chapter 12, topic 1. See generally A. Scott, The Law of Trusts §§ 404.1, 404.2 (3d ed.1967).
Washington has adopted the test of the Restatement (Second) of Trusts for determining whether a resulting trust has arisen. Manning v. Mount St. Michael’s Seminary, 78 Wash.2d 542, 477 P.2d 635, 636-37 (1970). Under this test,
A resulting trust may arise in any one of the following situations:
1. Where a private or charitable trust fails in whole or in part;
*873 2. Where a private or charitable trust is fully performed without exhausting the trust estate;
3. Where property is purchased and the purchase price is paid by one person and at his direction the vendor transfers the property to another person.
Manning, 477 P.2d at 637 (quoting Restatement (Second) of Trusts, introductory note to chapter 12, topic 1) (citations omitted).
Clearly the transfer of the Terrace Heights property does not fall into either of the first two categories. Accordingly, we will examine the third. Resulting trusts arise where the party transferring the property does not intend that the beneficial interest vest in the transferee. Here, however, Washburn & Roberts did intend, as did Park East, that the beneficial interest vest in the transferee. Park East paid the purchase price for the Terrace Heights property and took title in its own name. It did not direct the vendor, Washburn & Roberts, to transfer the property to a third party. The third category is thus also clearly inapplicable. In short, the transfer falls wholly outside the types of transfers that give rise to resulting trusts, and no resulting trust arose. The fact that the transfer was not recorded makes no difference. As the defendants themselves point out, under Washington law the recording of a deed “adds nothing to its effectiveness as a conveyance; all that it accomplishes is to impart notice.” J. W. Fales Co. v. O.H. Seiple Co., 171 Wash. 630, 19 P.2d 118, 124 (1933). Accordingly, we reject the defendants’ argument that because a resulting trust exists section 544(a)(3) is not applicable to the transfer of the Terrace Heights property.[3]
III. RETROACTIVE APPLICATION OF SECTION 544(a)(3)
The defendants’ second contention is that, even if the trustee might otherwise be able to avoid the transfer of the Terrace Heights property under section 544(a)(3), he does not have the power to do so in this case because the transfer occurred in the so-called “gap period” between the enactment date, November 6, 1978, and the effective date, October 1, 1979, of the Bankruptcy Code of 1978. Park East claims that Congress did not intend that section 544 be applied retroactively, and that even if it did, retroactive application would violate the Fifth Amendment to the Constitution.[4]
First, it is clear that Congress intended the challenged provision to apply to the gap period. Congress provided that in any bankruptcy case commenced after October 1, 1979, the old Bankruptcy Act of 1898 would not apply. Accordingly, section 70 of the 1898 Act, which provided the trustee’s avoiding powers, would not be applicable in such cases. Thus, unless section 544 applies retroactively, transactions occur-, ring during the gap period could never be avoided, if the bankruptcy petition was filed after October 1, 1979. We do not believe Congress intended to immunize transactions occurring during the gap period from the avoidance powers of a bankruptcy trustee. See In re Webber, 674 F.2d 796, 801 n. 10 (9th Cir.1982); see also In re Caro Products, 746 F.2d 349 (6th Cir.1984). Accordingly, we conclude that Congress intended section 544(a)(3) to apply retroactively.
*874 Second, retroactive application of section 544(a)(3) during the gap period would violate the Fifth Amendment only if it would be so arbitrary or unreasonable to impute to Park East knowledge of the Bankruptcy Code of 1978 after it was enacted, but before it became effective, that due process would be denied. Webber, 674 F.2d at 804. We do not believe the imputation of such knowledge is that unreasonable or arbitrary here. The parties were engaged in a sophisticated real estate transaction, and the record reflects that at least one of the partners in Park East was an attorney who was well aware of the risks of not recording. Our conclusion is buttressed by the fact that Congress could have constitutionally made section 544(a)(3) applicable to all transactions occurring after the enactment date. It is hardly arbitrary or unreasonable for Congress to be more lenient and give the public time to become familiar with the new Code before it became effective. See Webber, 674 F.2d at 804 (Schroeder, J., concurring). Accord Caro Products, 746 F.2d at 352.
Accordingly, we conclude that section 544(a)(3) can constitutionally be applied to the transaction at issue here. See Webber; Caro Products.
IV. CONCLUSION
Under Washington law, the Terrace Heights property is not subject to a resulting trust. Thus, we reject Park East’s argument that the existence of such a trust rendered the trustee’s exercise of his avoidance power under section 544(a)(3) contrary to law. We further hold that Congress intended section 544(a)(3) to be applicable to transactions occurring between the date of enactment of the Bankruptcy Code and its effective date, and that the trustee’s exercise of his avoidance power was constitutional, even though the transfer occurred during the so-called “gap period.” Accordingly, we reverse the grant of summary judgment in favor of the defendants, and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. Unless otherwise indicated, all references are to the Bankruptcy Code of 1978 as in effect at the time the bankruptcy petition was filed, that is, prior to the amendments made by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333.

. Section 544(a)(3) was subsequently amended by § 459 of the 1984 act. See supra note 1.

. In United States v. Security Industrial Bank, 459 U.S. 70, 82 n. 11, 103 S.Ct. 407, 414 n. 11, 74 L.Ed.2d 235 (1982), the Court explicitly refused to consider the retroactive application of the Bankruptcy Code of 1978 to property rights acquired during the gap period.