707 F.2d 451
 9 Collier Bankr.Cas.2d 20, 10 Bankr.Ct.Dec. 877,
Bankr. L. Rep. P 69,206
 In re Garry GROVES and Virginia Groves, Debtors.
UNITED STATES of America, Appellant,
v.
HOUSEHOLD FINANCE COMPANY, Appellee.
In re Thomas (NMN) LOTT, Debtor.
UNITED STATES of America, Appellant,
v.
GENERAL FINANCE CORPORATION, Appellee.
In re Lawrence ARCHULETA and Shirley Archuleta, Debtors.
UNITED STATES of America, Appellant,
v.
C.I.T. FINANCIAL SERVICES, INC., Appellee.
In re Henry Alfred RAYMOND, II, and Nancy Elizabeth Raymond,
Debtors.
UNITED STATES of America, Appellant,
v.
HOUSEHOLD FINANCE COMPANY, Appellee.
 Nos. 81-1436 to 81-1439.
 United States Court of Appeals,
Tenth Circuit.
 May 16, 1983.
 
 Donald McCartney, Dept. of Justice, Washington, D.C. (Richard L. Levine, Director and Counsel, and Barbara G. O'Connor, Atty.-Advisor, Executive Office for U.S. Trustees, Dept. of Justice, Washington, D.C., on brief), for appellant, U.S.
 Tuck Young, Young, Drummond & Dougherty, P.C., Pueblo, Colo., for appellee, Household Finance Co.
 Thomas E. Merrigan, Neville & Merrigan, P.C., Boulder, Colo., for appellee, Gen. Finance Corp.
 Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 These consolidated cases concern the effect of 11 U.S.C. Sec. 522(f)(2), which permits individual debtors in bankruptcy proceedings to avoid nonpossessory, nonpurchase-money liens on certain property. The issue in each case is whether section 522(f)(2) may be applied to so-called "gap period" liens, i.e., liens created after the enactment but before the effective date of the Bankruptcy Reform Act of 1978 (Act).[1] The bankruptcy court, 9 B.R. 775, held that the avoidance provisions did not apply on the basis that the application of section 522(f)(2) to such liens would impair vested property rights and therefore violate due process.[2] We reverse.
 
 
 2
 The bankruptcy court's decision was based, to a large extent, on our reasoning in Rodrock v. Security Industrial Bank, 642 F.2d 1193 (10th Cir.1981), aff'd sub nom. on other grounds, United States v. Security Industrial Bank, --- U.S. ----, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). Rodrock, however, dealt with liens created before the enactment of the Act. For that reason, the bankruptcy court's reliance on Rodrock was misplaced.[3] For like reason, Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), which was also relied on by the bankruptcy court, is inapplicable.
 
 
 3
 In our view, the correct analysis of the present issue is set forth in Webber v. Credithrift of America, Inc., 674 F.2d 796 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982). There, the court ruled that Congress intended that section 522(f)(2) should apply to "gap period" liens and that the application of section 522(f)(2) to such liens does not violate due process because persons acquiring liens during the "gap period" had notice of the future effect of the Act.[4] Id. at 804.
 
 
 4
 Judgment reversed and cases remanded for further proceedings consonant with this opinion.
 
 BARRETT, Circuit Judge, dissenting:
 
 5
 It is my view that the creditors in these cases were not "on notice" of Sec. 522(f)(2) until its effective date.
 
 
 6
 Webber v. Credithrift of America, Inc., 674 F.2d 796 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982) is, to be sure, contrary to my views. The court there held that Sec. 522(f)(2) does apply to "gap liens", that the Congress did intend for the section to apply retroactively, and that such application is not a denial of due process. The court could not and did not point out specific language in support of the congressional intent because there isn't any. However, the opinion does recognize that while a majority of the bankruptcy courts have held that Sec. 522(f)(2) does apply to the "gap liens", a respectable minority have held otherwise.
 
 
 7
 My research does not disclose clear authority. It is my belief, however, that it is a deprivation of due process of law to impute "notice" from the date of enactment, thus allowing property rights which vested prior to the effective date of the act to be destroyed. The Congress was certainly aware of the problem, and had it intended the section to apply retroactively it would have and should have explicitly so provided.
 
 
 8
 In United States v. Estate of Donnelly, 397 U.S. 286, 294, 90 S.Ct. 1033, 1038, 25 L.Ed.2d 312 (1974) the Supreme Court said that "[a]cts of Congress are generally to be applied uniformly throughout the country from the date of their effectiveness onward." (Emphasis supplied). In NLRB v. St. Luke's Hospital Center, 551 F.2d 476, 483 (2d Cir.1976), the court stated: "[w]e would surely agree that transgressions occurring prior to the effective date of the legislative amendments ... should not be made the basis of an unfair labor practice charge where Congress is silent on retroactive application." (Emphasis supplied). Finally, I agree with this language from South East Chicago Commission v. Department of Housing and Urban Development, 488 F.2d 1119, 1122 (7th Cir.1973):
 
 
 9
 There are few principles of our law more ancient and none more respected, than the canon which holds that laws are enacted for the future. A legislative pronouncement may not operate on acts which predate its passage. Neither may it serve to divest rights which have come into concrete existence before its date of effect.
 
 
 10
 (Emphasis supplied).
 
 
 11
 I would hold the retroactive application of the exemption provision in Sec. 522(f)(2) would be taking of valid property interests of the respective creditors without due process of law.
 
 
 
 [1]
 In each case one of the appellees had loaned the debtor money and obtained and perfected a lien on the debtor's furnishings and appliances after the Act was enacted on November 6, 1978 but before it went into effect on October 1, 1979. None of the liens was possessory, and none secured purchase-money obligations
 
 
 [2]
 The United States, intervenor in the bankruptcy proceedings, appeals from the judgment of the bankruptcy court
 
 
 [3]
 For the same reason, the analysis employed by the Supreme Court in disposing of the appeal from our decision in Rodrock does not apply to these cases
 
 
 [4]
 We note that the Supreme Court in United States v. Security Industrial Bank, --- U.S. ----, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) suggests that the issue raised in these cases should also be analyzed in light of the fifth amendment's proscription of uncompensated takings. Neither the bankruptcy court nor the parties used "takings" analysis however. And in any event, the result in these cases would not differ even if a "takings" analysis were employed, since the notice argument advanced in Webber would apply with equal force in that context